NELLIE FENTON *vs.* BURTON MANSFIELD ET AL.,
EXECUTORS.

Third Judicial District, New Haven, June Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The complaint alleged that the defendants' testatrix had agreed to pay the plaintiff $5,000 additional compensation if she would continue in the testatrix's employ until the latter's death; while the agreement proved was that the plaintiff was to continue her services during the lives of the testatrix and her sister, which she did in fact. So far as appeared, no question of variance was raised in the trial court, either upon the admission of evidence or upon requests to charge the jury. *Held:*—

1. That the discrepancy did not amount to a total failure of proof of
     the alleged cause of action.
2. That had the question been raised, the defect might have been
     cured by amendment during the trial.
3. That inasmuch as the real agreement was not a matter of dispute,
     the question whether it materially varied from that set forth in
     the complaint was one of law for the court.
4. That if the jury, without disregarding the instructions of the court,
     based its verdict on undisputed facts variant from those alleged
     in the complaint, the fault was not theirs, and a motion for a new
     trial for a verdict against evidence was not a proper remedy for
     the variance.
A party must specify wherein a claimed variance exists, so as to bring
     the attention of the trial court to the precise matter on which its
     decision is asked; otherwise the claim cannot be made the basis
     of an appeal.
The evidence reviewed and *held* sufficient to warrant its submission
     to the jury, under proper instructions, to determine whether the
     $5,000 was intended as a gift, or as compensation for services.
Instructions which perhaps might be open to criticism by the defend-
     ant if they stood alone, are to be read and interpreted in connec-
     tion with the rest of the charge clearly stating and limiting the
     grounds on which the plaintiff might recover.

Argued June 8th—decided July 20th, 1909.

ACTION to recover for personal services rendered the defendants' testatrix under an alleged agreement respecting compensation, brought to the Superior Court in New Haven County and tried to the jury before *Case, J.;* verdict and judgment for the plaintiff for $5,830, and appeal by the defendants. *No error.*

The complaint alleges, in substance, that from June 1st, 1891, to March 29th, 1906, the plaintiff was in the employ of the defendants' testatrix, Lucy H. Boardman, as a confidential secretary, companion, and attendant; that on divers days they conferred regarding additional compensation for such services, and finally agreed that, in consideration of the plaintiff's serving until the death of Mrs. Boardman, she would pay her $5,000 above her regular wages, and in addition to previous gifts or provisions made, or to be made, in her will; that to secure payment of that sum from her estate, Mrs. Boardman, on March 22d, 1906,

signed and delivered to one Fields a note reading as follows: "New Haven, Conn., March 22, 1906. $5,000. On demand after date I promise to pay to the order of Nellie Fenton five thousand dollars at the National Tradesmens Bank. Value received. Lucy H. Boardman," and a letter addressed to Fields reading thus: "I hand you herewith my note of five thousand dollars ($5,000) to the order of Nellie Fenton. Should I not give to her this sum during my life, I desire that the note be handed to her to be paid out of my estate. This is intended as a gift in addition to the provision made in my will for her benefit during her life," and the next day informed the plaintiff of the signing and delivery of said note and letter; that the plaintiff, partly in consideration of said agreement, continued to serve Mrs. Boardman until her death, and afterward presented her claim for $5,000 to the executors, payment of which was refused.

Upon the trial the plaintiff offered evidence to prove these facts: During the period of the employment of the plaintiff between 1891 and 1906, Mrs. Boardman paid her first $3.50, then $4 and finally $5 a week. Soon after Mrs. Boardman employed the plaintiff, she agreed to give her compensation in addition to her wages, provided she would continue in her service, and that of her sister, Mrs. Wade, until the death of the survivor of them. At that time no definite agreement or promise was made as to the amount of such additional compensation, but Mrs. Boardman promised to provide for plaintiff in her will, and that she would compensate her. The plaintiff thereupon promised Mrs. Boardman to so continue in service.

During all of said period from 1891 to 1906, Mrs. Boardman and her sister, Mrs. Wade, who lived with Mrs. Boardman, were invalids. Mrs. Boardman was seventy-one years of age, and Mrs. Wade seventy-four in 1891. The plaintiff took care of both Mrs. Boardman and Mrs. Wade, read to them, served them at meals, sewed for them, looked

after Mrs. Boardman's correspondence, wrote her letters, saw callers at the house, did the shopping, and during the last five years of Mrs. Boardman's life slept in the same room with her, rendering many of the services of a trained nurse. For eleven years the plaintiff was only absent from Mrs. Boardman's service for one night.

In the early part of her employment Mrs. Boardman informed the plaintiff that she had given her a legacy of $2,000 in a will which she had made. About 1899, when the plaintiff had lost a small investment, Mrs. Boardman said that she would amply provide for her. After making a later will, dated May 13th, 1904, which is the will proved as her last will, Mrs. Boardman told plaintiff she had given her in her will the life use of $10,000. Finally, on March 23d, 1906, Mrs. Boardman told plaintiff that she had left a note with Mr. Fields for $5,000, which would be paid out of Mrs. Boardman's estate in case it was not paid in her lifetime, provided plaintiff continued in the service of her sister and herself as agreed upon. The plaintiff, relying upon and in consideration of said promises of additional compensation, continued in the service of Mrs. Boardman until her death on March 29th, 1906, performing all services required of her to the full satisfaction of Mrs. Boardman, and thereafter continued in the service of Mrs. Wade until her death, about two years later.

On March 22d, 1906, Mr. Fields, the business adviser of Mrs. Boardman, acting under her instructions and at her request, prepared said letter and note made a part of the complaint. Mrs. Boardman signed the letter and note, and delivered them to Mr. Fields, who took them to the bank of which he was president, and kept them until after Mrs. Boardman's death, when he handed them to Mr. Mansfield, one of the executors of Mrs. Boardman's will, who retained them in his possession until they were produced in court at the trial. When the letter and note were delivered to Mr. Fields, Mrs. Boardman told Mr. Fields that she could

not repay the plaintiff for her services, which had been indispensable.

. No payment by way of the said additional compensation has ever been made to the plaintiff. She presented her claim against Mrs. Boardman's estate for $5,000, and it was disallowed.

Mrs. Boardman left an estate of $890,000. The only provision in her will for the plaintiff was a life use of $10,000.

The defendants offered no evidence.

The only parts of the charge of the court upon which error is predicated are the following: "There are two certain affirmative allegations in the answer which the reply denies, and here the burden of proof is upon the defendants, though as the case reaches you I think you will scarcely get beyond the allegations of the complaint and denials of the answer. . . . There is this to be said in that aspect of the case, however: If Mr. Fields took the note and letter merely as Mrs. Boardman's agent, and without intention on her part to relinquish control of them in his hands, there was, of course, no delivery of this note, and no such surrender of it by Mrs. Boardman as to perfect its validity as a binding legal obligation to pay its face amount to the plaintiff. It might still, however, in connection with other evidence as to its underlying character and purpose, be sufficient to establish such an agreement between the parties as to support an action here for any unpaid balance for Miss Fenton's services should you find that it was believed and understood that she was insufficiently compensated, and that this act of Mrs. Boardman's was intended as a guaranty by her that any such deficiency should be made good from her estate. Should such a possible conclusion be reached by. you, it would be your duty to determine, if the evidence should warrant such a computation, what, if anything, remains honestly due to the plaintiff for her services."

Mr. Fields as a witness for the plaintiff, having testified

that after Mrs. Boardman's death he delivered the note and letter to the defendant Mansfield, was asked if he could not state more definitely when he delivered them. This question was objected to, and admitted, and the witness answered: "I can only say it was soon after Mrs. Boardman's death, I cannot tell when."

The jury having rendered a verdict for the plaintiff for $5,830.33, the defendants moved for a new trial upon the ground that the verdict was against the evidence, which motion was denied.

*Burton Mansfield* and *James E. Wheeler,* for the appellants (defendants).

*Henry C. White* and *Leonard M. Daggett,* for the appellee (plaintiff).

HALL, J. There are but four reasons of appeal assigned in this case. They are: first, the denial of the defendants' motion for a new trial, upon the ground that the verdict was against the evidence; second and third, the instruction given the jury by the language of those parts of the charge complained of, as above stated; and fourth, in admitting the question asked the witness Fields.

It appears from the evidence to have been undisputed that the plaintiff was to continue the services, for which she claimed Mrs. Boardman promised to pay her the additional $5,000, during the lives of Mrs. Boardman and of Mrs. Wade, instead of until the death of Mrs. Boardman, as alleged in the complaint. This discrepancy did not amount to a total failure of proof of the alleged cause of action. A mere variance, though material, could have been cured by amending the complaint in the trial court. Practice Book (1908) p. 245, § 149.

But the question of variance is not properly presented by the record. No such question was raised in the trial court. It does not appear that any objection was made to

proof that the consideration of Mrs. Boardman's alleged promise was that the plaintiff should continue her services during the life of both Mrs. Boardman and her sister, nor that the court was requested to instruct the jury that such proof was variant from the allegations of the complaint. If the statement in the finding, among the facts which the defendants claimed were proved by the evidence, that "there was a fatal variance between the allegations and the proof," can be regarded as a claim of law actually made to the court to obtain a ruling upon the question of variance, it was insufficient for that purpose, since it failed to specifically state the claimed variance. *Woodruff* v. *Butler*, 75 Conn. 679, 681, 55 Atl. 167. As the particular facts which are claimed to materially differ from the allegations of the complaint were not in dispute, the question whether they constituted a variance was one of law for the court. *Morris* v. *Bridgeport Hydraulic Co.*, 47 Conn. 279, 288. There is no claim in the reasons of appeal that the court erred in charging, or in failing to charge, upon the question of variance. If, without disregarding the instructions of the court, the jury based its verdict upon undisputed facts which were variant from the averments of the complaint, the fault was not theirs, and a motion for a new trial for verdict against evidence is not a remedy for the variance.

The defendants made twenty written requests to charge in the trial court, but no failure to charge as requested is made a reason of appeal. Indeed, the only serious question presented in this court arises upon the alleged error of the trial court in denying the motion for a new trial, upon the ground that the verdict was against the evidence, and that question is whether the evidence showed that the $5,000 in question was intended by Mrs. Boardman as a gift to the plaintiff, or as an agreed compensation for her services. The trial court clearly instructed the jury that if they found that it was intended as a gift, the plaintiff could not recover, and with equal clearness that the plain-

tiff's case, which, to enable her to recover she was required
to prove by a preponderance of evidence, rested upon a
claim for compensation arising out of a claimed contract
or agreement entered into between the plaintiff and Mrs.
Boardman, whereby Mrs. Boardman, in consideration of
the plaintiff's services rendered, and to be rendered, prom-
ised to pay the specific sum of $5,000. The court said to
the jury: "It is upon this alleged agreement that the plain-
tiff bases her claim and rests her case, and as this is a vi-
tally essential feature of the matter, I stop long enough to
impress upon you here that to furnish the basis for a recov-
ery here there must have been some valid and binding
agreement between the parties, an offer and an acceptance,
with consideration, and a mutual understanding and agree-
ment by the parties of and to the binding terms of the un-
dertaking." Among the circumstances which it is urged
support the claim that Mrs. Boardman intended by her
said acts to make a gift to the plaintiff of the $5,000, and
not to pay it as compensation for services, are the facts
that the plaintiff, during her entire term of service, was
paid her regular wages; that the sum of $5,000 was a
large one to be paid as additional compensation consider-
ing the services rendered, and the sums already paid or
promised; and that in the letter left with Mr. Fields with
the note Mrs. Boardman says, "This is intended as a
gift . . . ." On the other hand, in support of the claimed
agreement to pay this sum as additional compensation, it
is claimed that the evidence shows that the weekly com-
pensation paid to the plaintiff was inadequate, and was
admitted by Mrs. Boardman to be inadequate for the serv-
ices rendered; that Mrs. Boardman said to Mr. Fields and
to the plaintiff that the plaintiff's services were invaluable,
and that "she could not begin to compensate her for what
she had done for them"; that Mrs. Boardman told the
plaintiff that if she would stay with her and her sister dur-
ing their lives, she would give her additional compensation,

and that the $5,000 was given, or promised to be paid, in fulfillment of that agreement; and that Mrs. Boardman states in the note for the $5,000 that it is for "value received."

The question whether the $5,000 was intended as a gift or as a payment under such an agreement was fairly submitted to the jury, and they must have found that it was intended as compensation, and not as a gift. The trial judge, who heard the testimony and observed the witnesses, has refused to set the verdict aside. We do not find that he erred in such refusal.

The criticism of those portions of the charge set forth in the second and third reasons of appeal, upon the grounds that they contain a misstatement of the rule of the burden of proof, as applicable to this case, and an instruction that the plaintiff could recover on a *quantum meruit* although no evidence was offered regarding the value of the services rendered, and a ruling that the $5,000 note could be regarded as a guaranty, are not justified. These portions of the charge must be read in connection with the remainder of the charge. We have already said that we interpret the charge as clearly instructing the jury that the plaintiff could not recover without proving that there was an agreement to pay the $5,000 as additional compensation for services. In speaking of the note as a "guaranty," that word was evidently not used in its legal sense, but as meaning that the note might be regarded, in connection with other evidence, as a written statement of Mrs. Boardman that there was an unpaid balance for services under a special agreement, and as a statement made to enable the plaintiff to collect the balance "honestly due to the plaintiff for her services" under such agreement.

There was no error in admitting the question asked the witness Fields.

There is no error.

In this opinion the other judges concurred.