STATE OF CONNECTICUT *v.* NORMAN SIVIN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 9-25065

Argued September 14—decided December 16, 1966

*Norman Sivin,* of Old Saybrook, pro se, the appellant · (defendant).

*Salvatore F. Arena,* assistant prosecuting attorney, for the appellee (state).

PRUYN, J. The defendant in a trial to the court was convicted of speeding in violation of § 14-219 of the General Statutes and has appealed, assigning as error the trial court's conclusion upon all the evidence that he was guilty of the crime charged beyond a reasonable doubt and that the portion of § 14-219 which provides that a speed greater than the posted speed is prima facie evidence of an unreasonable speed, upon which the court predicated. its con-

clusion of guilt, is violative of article first, § 8, of the Connecticut constitution as a denial of due process of law.

No finding was necessary and none was made. The material facts are not substantially in dispute, and the trial court could reasonably have found them as follows: It was a clear day with the sun shining and a few clouds in the sky, April 4, 1966, when the defendant, driving a new Ford in excellent mechanical condition easterly on the Connecticut Turnpike in the right-hand lane, passed through a radar zone extending approximately three-quarters of a mile eastward from the Long Hill overpass in the town of Clinton at about 2:35 p.m. at an even speed of seventy miles an hour. The Connecticut Turnpike is a multiple-lane, limited-access highway with a statutory maximum speed limit of seventy miles an hour and has two lanes in each direction separated by a median divider, each lane being twelve feet wide. There were no exits or entrances to and from the eastbound lanes anywhere within the radar zone. Just west of the Long Hill overpass, there was a state traffic commission sign indicating a posted speed of sixty miles an hour; there were no speed signs in the radar zone. The defendant had his car under perfect control at all times and when signaled to stop came to a gradual stop without any abrupt braking. Had not the arresting officer been notified by the radar operator of the defendant's speed, he would have had no particular reason to notice the defendant. The traffic was extremely light, there being only one other car in the eastbound lanes, several hundred feet behind the defendant, and no other cars during the five minutes or so involved in the stopping of the defendant and the issuing of the summons. The visibility was unlimited except for the topographical features of the highway itself. The road was dry. The driving conditions were

ideal, well-nigh perfect. The radar equipment had been properly tested, was functioning properly and accurately checked the defendant's speed at seventy miles an hour.

Section 14-219 of the General Statutes, with the violation of which the defendant was charged, establishes as the test of speeding the reasonableness of the speed under the circumstances specified therein, with certain absolute speed limits; gives the state traffic commission authority to determine reasonable and safe speed limits and to post signs indicating such limits along the highways; and provides that speeds in excess of such posted limits shall be prima facie evidence of unreasonableness.[1] Since 1905, the reasonableness of the speed has been and still is the criterion by which a violation of the law against speeding is determined.[2] Until 1963, there had been no limitation upon the determination of reasonableness. In that year, the General Assembly added the provision that speeds in excess of seventy miles an hour on a multiple-lane limited-access highway and sixty miles an hour on any other highway

---

[1] "Sec. 14-219. SPEEDING. (a) No person shall operate any motor vehicle upon any public highway of the state . . . at a rate of speed greater than is reasonable, having regard to the width, traffic and use of the highway . . . , the intersection of streets and the weather conditions. The following shall constitute violations of this section: . . . (2) the operation of a motor vehicle at a rate of speed greater than seventy miles per hour upon a multiple-lane, limited access highway or greater than sixty miles per hour upon any other highway. (b) The state traffic commission may determine speed limits which are reasonable and safe on any state highway, bridge or parkway built or maintained by the state, and may erect or cause to be erected signs indicating such speed limits. . . . Any speed in excess of such limits shall be prima facie evidence that such speed is not reasonable, but the fact that the speed of a vehicle is lower than such limits shall not relieve the operator from the duty to decrease speed when a special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions. . . ."

[2] Public Acts 1905, c. 230 § 10. The first speeding statute in Connecticut was enacted in 1901 and forbade speeds in excess of certain specified limits. Public Acts 1901, c. 69 § 1.

were violations of the statute.[3]  By this enactment, the legislature reaffirmed the principle of reasonableness of speed and made a legislative determination that speeds in excess of such limits were greater than were reasonable, irrespective of the prevailing conditions, thereby in effect establishing absolute speed limits.

Since 1907, with the exception of the period from 1927 to 1935, the statutes, with subsequent amendments, have provided that any speed in excess of certain specified limits was prima facie evidence that the speed was not reasonable and safe.[4]  In 1935, the state traffic commission was first authorized to determine reasonable and safe speed limits and to erect and cause to be erected signs indicating such limits; any speed in excess of such posted limits was prima facie evidence that the speed was not reasonable.[5]  "The phrase 'prima facie evidence' means evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . .  [T]he fact which is specified to be prima facie evidence of the fact to be inferred or presumed must be a fact which in common experience leads naturally and logically to the fact inferred or presumed.  In the mind of the trier, the proof of one must produce the belief that it is more probable than not that the other, the ultimate fact, is thereby established." *Mott's Super Markets, Inc.* v. *Frassinelli,* 148 Conn. 481, 489, 490.  "However, the fact to be inferred or presumed from such evidence is not conclusive, and the ultimate burden of persua-

---

[3] Public Acts 1963, No. 595.  The legislative history of this public act clearly shows that the legislative intent was to provide reasonable and safe maximum speed limits and to retain the existing law as to reasonableness of speed in respect to speeds below the maximum limits.  10 H.R. Proc., Pt. 14, 1963 Sess., pp. 5497-5500.

[4] See Public Acts 1907, c. 221 § 11; such provisions were repealed by Public Acts 1927, c. 75 § 2.

[5] Cum. Sup. 1935 § 566c.

sion upon all the facts still remains upon the state. *State* v. *Gargano,* 99 Conn. 103, 108. It does, however, cast upon the defendant the burden of going forward with evidence that such speed was reasonable and proper. *Radwick* v. *Goldstein,* 90 Conn. 701, 707." *State* v. *Kilpatrick,* 23 Conn. Sup. 437, 441, 1 Conn. Cir. Ct. 298, 302. In other words, the prima facie evidence of the defendant's speed is not conclusive but is rebuttable by the defendant. There appears, however, to be a tendency to regard the posted speed limit as the absolute speed limit. See regulations of the state traffic commission, of which we may take judicial notice *(Squires* v. *Wolcott,* 133 Conn. 449, 453), and other examples as set forth in the footnote.[6] It is unnecessary for us in this case to decide the validity of those regulations,

In establishing absolute maximum speed limits by the 1963 amendment and by leaving unchanged

---

[6] [Conn. Dept. Regs.] "USE OF DIVIDED CONTROLLED ACCESS HIGHWAYS AND BRIDGES Sec. 14-212-1. DEFINITIONS. . . . (15) 'Speed limit' means the maximum speed permitted under the best of conditions as approved by the state traffic commission. . . . Sec. 14-212-4. SPEED RESTRICTION. Vehicles shall not be operated at speeds in excess of the posted limit."

Another example is contained on page 11 of the Connecticut Driver's Manual (1966-1967), published by the department of motor vehicles: "The posted speed limits indicate the limit of reasonable speed under ideal conditions."

And a third example is found in the testimony of the arresting officer in the case at bar: "Q.—What would the conditions have to be so that you might characterize them as being ideal? A.—Well, strictly that, road dry, traffic light and visibility clear. Q.—So that are you saying that the conditions were ideal? A.—Yes, I would say they were ideal for the posted speed limit. Q.—But not ideal for an absolute speed limit? A.—That is correct. . . . I feel that no one should be doing seventy miles per hour out there. . . . Q.—[A]m I correct in concluding that in your opinion about the state commission sign saying sixty miles per hour, anything above sixty and at seventy, between the brackets of sixty and seventy is in your opinion an unreasonable speed? A.—From sixty and above is unreasonable. Q.—Without regard to the dryness of the road? A.—With regard to ideal conditions, sixty should be the limit as it is posted."

the other provisions of the speeding statute, the legislature indicated its intent that there was to be no change in the law in respect to speeds which were below such limits and that the long-established principles of reasonableness of the speed under the prevailing circumstances and conditions and of the prima facie effect of evidence of speed in excess of the posted limits would continue in effect as to such speeds. But by this amendment the legislature has recognized that a speed up to but not exceeding the absolute limit, even though above the posted limit, may be a reasonable speed if the circumstances and conditions existing at the time are such as to justify a conclusion of reasonableness. Such is the logical and reasonable interpretation of the statute as amended. See *Bridgeport* v. *Stratford,* 142 Conn. 634, 641, 644.

In view of the prima facie evidence provisions of the statute, the question then arises as to what evidence is sufficient to rebut the prima facie evidence of the unreasonableness of a speed over the posted limit. In the leading case of *State* v. *Gordon,* 144 Conn. 399, where the conditions were favorable, weather fair, traffic light, visibility good, highway dry, the court held that the excess of speed over the posted speed limit was an essential element in the determination of reasonable speed, saying (p. 402): "Nevertheless, . . . [the defendant] concedes, as he must, that the mere operation of a motor vehicle at a speed greatly in excess of the posted speed could, under any conditions, constitute a violation of the statute. The degree of excess of speed over the posted limit is an important factor to be considered by the trier in determining whether, under all the circumstances, a motor vehicle has been operated at a speed greater than was reasonable. . . . The defendant not only operated his automobile at a speed fifteen to twenty miles per hour in

excess of the limit but, while doing so, passed three cars." The crux of the *Gordon* decision lies in the degree of excess over the posted speed. Following the *Gordon* decision, several cases, all decided prior to the 1963 amendment, have come before us, including *State* v. *Tornatore,* 22 Conn. Sup. 460, 1 Conn. Cir. Ct. 89, *State* v. *Kilpatrick,* supra, *State* v. *Benavides,* 24 Conn. Sup. 91, 1 Conn. Cir. Ct. 419, and *State* v. *Molinar,* 24 Conn. Sup. 160, 1 Conn. Cir. Ct. 476, all involving situations somewhat similar to the one in the case at bar, and in each case we upheld the defendant's conviction. In those cases, as well as in the *Gordon* case, the conditions could be characterized as favorable in varying degrees and the degree of excess over the posted limit varied from a minimum of fifteen miles to a maximum of twenty-five miles. The state traffic commission is presumed to have fixed reasonable and safe speeds under favorable conditions, and therefore proof of favorable conditions is not sufficient to rebut as a matter of law the prima facie evidence. *State* v. *Tornatore,* supra.

The burden of proof of the defendant's guilt is upon the state. To sustain this burden, the state must prove that the speed was unreasonable under the circumstances; it is aided in this by evidence of speed in excess of the posted limit, which by the statute is prima facie evidence of unreasonableness. To overcome and to rebut this prima facie evidence, the defendant must produce evidence that his speed was reasonable. What is a reasonable speed depends on the conditions and circumstances of each case. Reasonableness cannot be determined on a basis of a fixed formula. The quantum of evidence which, if credited, would be sufficient to establish reasonableness and thus rebut the prima facie evidence of unreasonableness is a matter to be determined in each case. The word "favorable," as used in con-

nection with the circumstances and conditions, is a word of somewhat indefinite meaning, does not furnish a specific standard, and may have a different meaning to different persons.

To determine the claim of the defendant on all the evidence the trial court could not reasonably reach the conclusion that he was guilty, we have had to examine the evidence. This evidence, as to which there was no basic conflict—weather clear, visibility unlimited, road dry, extremely light traffic, no intersections, two lanes in same direction separated from the opposite lanes by a median divider, the defendant's car in excellent condition and under perfect control, its speed not greatly in excess of the posted limit and within the permissible statutory limit—was sufficient evidence of reasonableness of speed to rebut the prima facie evidence of unreasonableness. There being no other evidence of unreasonableness, the state failed to prove beyond a reasonable doubt the guilt of the defendant. "The trier may not reach a conclusion of guilt where the facts, established by the evidence, including those reasonably and logically inferred from other proven facts, are rationally consistent with the innocence of an accused. A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion." *State* v. *Foord,* 142 Conn. 285, 295. "To warrant a judgment of guilty the evidence must be such as to establish the guilt of the accused beyond a reasonable doubt, and any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused, must prevail." *State* v. *Guilfoyle,* 109 Conn. 124, 139. In our opinion, the evidence reasonably leads not to a conclusion

of guilt but to one of innocence, and the judgment should be reversed.

It therefore becomes unnecessary for us to consider the defendant's claim that the prima facie provisions of the statute are unconstitutional as a denial of due process of law by creating a presumption of guilt and destroying the presumption of innocence.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion KOSICKI and LEVINE, Js., concurred.

